We are now recording. Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Susan F. Hutchinson presiding. Your Honor, the first case on docket this morning is 2-22-0112, the People of the State of Illinois Plaintiff Appellant v. Michael A. Luciano, Defendant Appellee. Arguing for the appellant, Ms. Janet Mahoney. Arguing for the appellee, Mr. Jonathan Yeasting. Well, good morning, counsel, and I apologize for the delay caused by me, but hopefully we will get this done efficiently and we will all have a better day. So with that, Ms. Mahoney, are you ready to proceed? I am. You may do so. May it please the court, counsel, King County Assistant State's Attorney Janet Mahoney for the People of the State of Illinois. The trial court in this case made six distinct errors when it granted defendant post-conviction relief following a third-stage evidentiary hearing. This court may review those errors de novo. Each error requires this court to reverse the trial court's granting of post-conviction relief and to enter an order denying post-conviction relief. I will touch on... Didn't the judge, when transferring from second to third, indicate what he thought was necessary for this third-stage hearing? He indicated that he... Just as this court indicated in the Luciano 2 decision, and that is, what did the people know and when did they know it? And what was presented? Well, Justice Burkett has a question. I'll yield to that. Go ahead. You can finish if there's more to that answer. Okay. So what did the state do or what was presented, even though you didn't have the specific burden, but what was presented about what the state knew and who knew it and when they knew it? Well, as you stated, it was not the state's burden. It was the defendant's burden to show what the state knew and when the state knew it. And it is the people's contention that the got into that, what did the state know and when did they know it? There were preliminary inquiries that needed to be met. Specifically... Let me ask this question, which is, as you said, we can review this case de novo. So we look at the entire record together with the trial court's findings, correct? Correct. Let me ask you this question. Hypothetically, if the defendant had not taken the plea on the 90 and 91 charges, specifically the firearms that were found in the Chavez residence, how could the state... Tell me your theory as to how the state could have proved constructive possession of those weapons without introducing evidence of the murder, the solicitation at least of the murder. How is it possible? Because I've looked at the record with regard to both the 1990 and the 1991 charges, there was no factual basis. It was just a conclusory statement by Mr. Crimmins that we can prove the case. How could they have proven that the defendant ever actually possessed those weapons? Aside from a single fingerprint on one of the firearms, that on that date, he was in possession of those weapons without evidence of the murder. Tell me how. That would have been through Hector Rodriguez, who would have testified about the events that happened on the day they transported the guns from one location to the Chavez residence. So that's the evidence that you would have had to present to convict him of unlawful use of weapons by a felon. The cases were inextricably intertwined. You could not separate them, correct? Factually. Factually, there's overlap in the facts. There is a set of facts that entails the 1991 cases with the murder one, but simply because there are overlapping facts doesn't mean that they are the same acts under the compulsory joinder statute. What other physical act, not your theory, what other physical act did the state have to present other than the defendant's actual possession of those weapons in connection with the solicitations and the order to make the hit? We needed to know who fired the shot, who killed them to establish that it was an accomplice of the defendants without knowledge of who that person was. We cannot bridge the gap in proof. What about reasonable inferences from the circumstantial evidence, which was overwhelming? Right, so we're getting actually into the reasonable chance to secure the conviction aspect of this argument, which is actually point number five and six where the errors occurred, but I'm going to address that. The state went forward on good faith that they could prove their case of unlawful possession. You have just admitted that they could not prove that case without some evidence of the murder. You just said that. What I said was we could prove it with Hector Rodriguez, who saw a defendant with the weapons three days after the murder, three days after the murder. Which answers the question, you could have proven the murder too. No, because a lot of things could have happened between the murder and three days after the murder. Who is the shooter? We need to know that it was an accomplice. We do not need to know that it was a specific name, but we need to know that it was one of defendant's accomplices. Without that a bridge in the proof, there is a gap and the state would be unable to prove him guilty beyond a reasonable doubt. Let me ask you this question. Do you have any case law that supports that proposition that you have to be able to prove the case beyond a charging decision, but we're talking about compulsory joinder here and it was a standard by this court. It's a reasonable chance to secure a conviction. It is not a reasonable chance to charge. Here's another question. I was looking, I didn't see the transcript of the grand jury hearing in the 91 case in the record. Is that in the record, the grand jury presentation? I, I, I'm not entirely sure if that's in there. I'm looking at C 879. Maybe we can order a supplement to the record. The, the date for the offense is scratched out. It appears that it had been October 31. I can't really tell, but it looks like it's scratched out. And then the date of the 28th, October 28 is written in. Do you know who did that when that happened? I do not know that right now off the top of my head. That's at C 879. Throughout, throughout the prosecution of the case and during argument at the sentencing hearing on the 90, 91 cases, the state treated the case as if the defendant was the actual, it had actually solicited the hit, correct? Correct. There was a solicitation. Yes. And, and in the, the state's pen letter, which was drafted by this trial prosecutor, Mr. Crimmins, the state said that defendant is a notorious gang leader of the Latin King street gang in Aurora. His father, Angel Luciano is reputed. It was a reputed leader of the Latin Kings. Defendant is dangerous and previously charged with ordering the assassination of gang, of gang member in Aurora. The case was dismissed for lack of proof. So you're saying the state did not have enough evidence to say that the defendant was involved in a murder or to charge, but in the pen letter, they make that assertion that he ordered the you know, uh, I don't know what to call it for a second, but a word, this black hole of, of the lack of evidence. So he ordered the, he solicited Hector Rodriguez three days before the murder. He also solicited him on the day of the murder. He was part of the, he was there the day of the murder earlier. He was not with the parties that executed Hector or I mean, uh, but later on the defendant confirmed in a bar that the hit was done. So Hector Rodriguez had two oral statements in one audio recorded statements in the first statement where he was listed as a confidential informant. He stated the meeting happened on the day of the murder. However, in the subsequent statements, including the audio recorded, he stated he was at a meeting three days before three days before the murder, when the guns were handed out. So we have him connected to the defendant and being solicited three days to the murder. Hector Rodriguez was not the shooter. He was not present at the shooting scene. He doesn't have anything to offer about the day of the shooting other than after it had been completed, he met up with people at that bar and he was informed that the, the hit had occurred, the hit that had been ordered. But the gap is who was that shooter? Where did those guns go? The state does not have to prove beyond a reasonable doubt, the identity of the shooter. You know, that that's the law. There's plenty of circumstantial evidence that the individuals who were ordered to do the hit were Latin King band gang members, all known to the defendant. And one, if not more of them, uh, fired the shots. And the, the ballistics proves that the guns that were used were found, uh, uh, and the defendant was I understand what you're saying. The state gave up after Ron Howe was acquitted and they just left the case go right until 2005 when the FBI stepped up and said, Hey, we have an idea. We can solve some of these open murders, get, get some leverage with federal drug charges. That's what happened, right? They did not have any substantively admissible evidence establishing that the person who fired the shots at the house was an accomplice of the defendant and all the criminal design cases talk about, you don't need to know the name of the person, but you need to know that they are connected to the defendant. And we have, yeah, excuse me. There were at least four members of this party, the Latin Kings at the angel, uh, Luciano's house or the house of meeting on October 28th, they were ordered per Hector Garcia to shoot at deuces houses and Gonzalez was supposed to be hit. And they walked away with these guns. Are you saying it is just a coincidence that Mr. Gonzalez was killed three days later? No, I'm saying what you're saying. Absolutely not. What I'm saying is that that is a lot of evidence, but we still need a little bit more to secure the conviction because a lot compulsory rejoinder at that point in time. And this is something that every prosecutor who's trained should know this. If you are going to withhold charging on a greater offense, but you know that the facts are intertwined with a lesser offense, you have to make a record and request the court and make a record that the defendant is aware of the fact that the state is reserving the right to investigate the greater charge. Otherwise you have only one option. You're not only process the entire case, not just a portion of it. There is no case law that supports the argument that you're making. Do you have a case that supports this argument? It's the common criminal design line of cases that talk about how you have to make a connection between the shooter and the defendant. And without that connection, you cannot sustain a conviction on this accountability theory. Who was the shooter? It turned out that it was three of them. We don't know which one fired which gun. It was Michael which gun? Did we need to know that? We did not, but we needed to connect those three who did fire the guns to the defendant. And at the time, three that the defendant handed the weapons to, he handed the weapons to them three days before the murder, three days before the murder, where, what happened to those guns between that time? Well, the question that I have is in, I'm not sold one way or the other, but you had several search warrants and police reports, and they all indicate weapons and murder. Did they not? They were investigating the murder. Yes, they were. And when they did the search warrant of the defendant's home, it was for search warrant for weapons and murder, correct? Correct. And they did not find any evidence at the defendant's home. They did not find any evidence at any of those other homes that they investigated except for Diane Chavez's home. That's the only place they found any evidence. And at that, at that time in 90 and 91, they have an oral statement from Juan Acevedo, not helpful to us because it's an oral statement. And they have a statement from Hector Rodriguez, helpful, but he doesn't know who the shooter was because he wasn't on the shooting scene. He can't tell you, he can guess is what he said. He actually said, I can guess who it was, which is exactly what this court would be asking the state to do, put on evidence and guess who it was. Would you, would you now concede, I think you are now conceding that the, the acts that were committed by the defendant, Michael Luciano, were the acts that were involved in the murder, the possession and distribution of the weapons, correct? That is part of the murder. Yes, it is. Yes. Yes, it is. But there still was that gap. There is no, there, again, you, you haven't given us a case that, that says that to go forward ethically on the prosecution for the unlawful use of weapons by a felon, you had to introduce evidence of the solicitation, which was the solicitation of the murder. And then the motive for hiding the weapons, which would have proven that the defendant retained constructive possession. The weapons were hidden at the Chavez residence because they were used in a murder. So how could the state ethically go forward if you have that lack of confidence? On the UUW cases, but not the murder. That makes absolutely no sense. The UUW cases were very easy because Hector Rodriguez saw defendant touching those weapons. We have eyewitness testimony saying, I am seeing the defendant with those reasons. The reason they were put in Chavez's residence was because they were used in the murder. I see that my time's up. Would you like me to continue with my thought on that point? I have a lot more Justice Hutchinson, if you don't mind, can we continue to go on for a little bit? Justice Shostak, I think is in agreement. So Ms. Mahoney, you can finish that thought. And then Justice Burkett has another question. Okay. So with the weapons charges, those were based on eyewitness observation of defendant holding those guns on a date that was not the murder. That is a separate act under compulsory joint or same act analysis. Every accountability murder case is going to have an element of solicitation and conspiracy under this common criminal design theory. It will have it, but just because you solicited that, that isn't a complete crime in and of itself. It was a solicitation and asking that is not murder. The murder is the completion. Ms. Mahoney at the third stage hearing, you could have called and I'm not, I don't know if you were, were you involved in the third stage hearing? Yes, I was. You could have called a trial counsel, Mr. Brosnan, state's attorney, Gary Johnson, former state's attorney, Gary Johnson, state's attorney Barsanti to explain some of these but no witnesses were called, correct? No witnesses were called because no witnesses were necessary. This is a matter of law under the facts that you have in the reports. It's not just a matter of law. The decisions that are made during a prosecution are subject to testimony and what was entailed in the plea agreement. For example, in the interest of fundamental fairness, shouldn't the defendant have been warned? I mean, Judge Dunn did a great job. He warned him about everything else, including if you ever get arrested for another felony could be used against you, you could face extended term. No one piped up and said, you know, by the way, you can still be charged with first degree murder. And let me ask you this question, how could competent defense counsel, and we presume that plea counsel was competent. How could he allow his client to be exposed to first degree murder charges, unless that plea agreement entailed a promise by the state that this case is over for lack of evidence, and we're not going to pursue further charges. And if that was the state, if it was the state's position, the United States Supreme Court has warned prosecutors recently, but the Supreme Court in the state of Illinois, and boy, in Navarro, Navarro Lee and other cases, make a record, there was no record made that the state intended to reopen this investigation sometime in the future. And we presume that Mr. Brosnan provided reasonable assistance to the defendant in advising him to take the plea. I think what Justice Burkett is asking too is, isn't this piecemeal litigation, which, as Justice Burkett points out, we're trying to avoid. This is not piecemeal litigation. This is under compulsory joinder law. The inquiry is, are these the same acts? State's position, these are not the same acts. The possessions happened days before and days after the murder. The solicitation happened days before and that person was not the shooter. That takes, they're not the same acts. We shouldn't even be going any farther. The next thing is, was the state consciously aware of evidence that would give them a reasonable chance to secure conviction? Here, they were not consciously aware of evidence because they didn't have any witness locked in that could have provided that bridge in the gap of proof between the solicitation and the murder. There is a gap there. We don't know who the shooter is. We don't know if they were at the meeting. We don't know what happened with the guns three days before and three days after. Who had those guns? Were they at the meeting? Did defendant order them, that person with the gun, to fire that shot? There was no substantive evidence for that. Are you suggesting there was another meeting that we don't know about? We don't know anything and that was why it would have been premature to charge the defendant with murder at that time. They could go forward with the weapons offenses and the solicitation because those were separate acts. The individuals that Hector Rodriguez named were the same individuals who were possibly responsible for the murder shot, correct? They were the same people. We did not know when we charged the 90 and 91 cases with any usable evidence that they in fact were the shooters. You went back again to the acts. The only act, the only physical act, was the defendant's possession of the weapons and distribution of the weapons. That part is over. Your sole argument is that compulsory jointed did not apply because there was not clear evidence of shooter. Is that your position? That's partly my position but we cannot ignore the same acts requirement here. There's only one act that the defendant engaged in. It was the possession of the weapons and that was the argument that Mr. Pencilla made. His closing argument and I'll read it to you. In his closing argument, both in the opening and closing argument, the assistant state's attorney during the trial argued that we have shown his control over those weapons whether it be constructive possession or his actual hands like he left those fingerprints on that governor. Then later on in rebuttal he says what this case is really all about is control of the weapons, control of the people, control over the kings. Later he argued what we have then is Michael Luciano involved in the distribution of those weapons and that is the key element. That's the key element. That's the key fact. That's the only physical fact that tied the defendant to the murder was his possession and distribution of the weapons. That was the state's position throughout since 1990. You're speaking to the same set of facts. The same set of facts. The physical act that the defendant was accused of in the possession charge is the same physical act that was part and parcel of the murder. You can't separate it. Possessing weapons three days before and three days after the separation. That's all I have. Justice Shostak, do you have anything? I have nothing further, thank you. I don't have anything either at this moment, Ms. Mahoney. You will have an opportunity for rebuttal if you choose. Thank you. Thank you. Mr. Yeasting. Good morning, your honors. Ten years ago this court asked what the state knew and when it knew it and we have our answer under any standard. Kane County knew of the offense long before the plea agreement and the NALI, the solicitation charge. Because they knew of the offense, if a murder charge was to have brought, it had to have been brought back in 1991 and Mr. Cale was ineffective for not moving to dismiss the 2007 charges for that reason. Now the court is aware the issues have narrowed down to these two questions on is it the same act and did they know enough to bring charges or enough to ethically bring charges back in 1991. All right, Mr. Yeasting, this was your client's petition that went to court stage and he knew who the prosecutor was at the time because he was subjected to the same prosecutor. He had a defense attorney at the time and I'm assuming he remembered his name or somebody could have found his name. Were either one of those people in any way contacted for affidavit or testimony in this particular third stage to solve this burning question who knew what and when? Your honor, I don't know if they were specifically contacted by Mr. Luciano's post-conviction attorney. I can tell you that we have a pretty former State's Attorney Johnson on the stand today what he might have known 30 years ago. We have State's Attorney Johnson's grand jury where he's conducting the Rand Hell grand jury where they actually indict one of the principals and that's one of the glaring holes in the state's claim that we didn't know who the shooters were. Kane County took one of the shooters, Robert Rand Hell, to trial and it took up to trial based in no small part on Michael Rodriguez's recorded statement. Sorry. That's okay but the state lost confidence and it was just established during counsel's opening argument. The state lost confidence in those informants. There was a flip. Acevedo flipped. He was eventually charged with perjury and the theory is that these witnesses were being intimidated by the Latin King Street gang and therefore they lost confidence in their case and the state argues that there is nothing in the compulsory joint jurisprudence which imposes a duty upon the people to seek out evidence that may or may not ultimately be available. In other words, doing nothing is okay. Your Honor. Do you agree with that? Doing nothing is not okay when you are also charging solicitation of aggravated discharge of a firearm and when they're also charging the possession of the weapons that are used in the shooting and when we look at what they had, they had Hector Rodriguez on tape after being given a gang violation who gives them the entire case, talks about Michael holding the meeting, Michael distributing the weapons to the meeting, identifies who those weapons are going to. Rand Hell gets the the ballistics match, the fingerprints match and then on top of that they have Acevedo and also Ursula McCoy later talking about how after the shooting, shortly just after the shooting, Latin Kings with those same weapons are running to Acevedo's house and trying to hide them. Now even if they lose Acevedo a witness, heck even if they lost Hector Rodriguez as a witness, you still have all that physical evidence and you can put Rodriguez on the stand. He denies it and it becomes a 115-10-1 gang case. Did you say this to the cops? Did you say this to the detective? Did you say this to the detective? And the defense attorney has nowhere to go across examination. We've all seen records like this. The state's attorney, if he had so chosen, could have gone forward with an investigation even after dismissing the charges against the defendant. They could have done overhears, they could have done a 108B if they had, if they could establish that they had run out of investigative leads, they could have done a 108B electronic surveillance. There are a lot of things that were available to the state, correct? Your honor, frankly by the time that the solicitation of aggravated discharge was dismissed and the plea agreement happened, the time clock had already expired. The 120 days from charging him based on something else, based on those same acts, was already done. No, I'm talking about theoretically because the state acknowledged that they had to prove the connection between the murder to prove the possession. So I'm talking about if the state had not processed the entire case, they could have gone forward with the investigation. Had they acknowledged it earlier before those 120 days had run? Yeah, they would have been able to do things. That later come up, there's the FBI over here and they pull some flipper witnesses with the deals and they could have kept going and they decided that, well, he's the teenage middleman, we have him on the guns, let's see what we can get in an open sentencing hearing on the guns, ask for consecutive extended term sentencing on 10 different firearm counts and they only get two in concurrent. But they tried to go for a big sentence on a plea agreement because they had lost the Randhell trial after he puts his aunt on the stand for an alibi and it decides that it's to close out the case. When was the trial on Willie Arce? Was that before or after the trial? The Willie Arce material only comes in after that 2005 information. Yeah, but when was he tried on Willie Arce? Was it before this trial? It was immediately before the trial on these 2007 charges and that's why we have the life sentence happening in this case even though this is the earlier incident because it's the second murder conviction that triggered mandatory natural life and led to that sentencing. Well, Justice Burkett raised an issue earlier with counsel that a competent, good defense attorney is not likely to plead someone to these two charges or this set of murder out there hanging without something other than what we have on this record. Where does that play into this? I don't know what tax insurances might have been given back in 1990 and 1991 as part of this plea agreement. There's an indication that the solicitation charge was already in effect back then and therefore they already couldn't go forward on the murder even by the time that that plea occurred. We don't know, but it does support an inference that everybody back then thought that this was an assurance that King County was done with Michael Luciano as regards this incident. Mr. Easting, the state relies on people versus regarding the mandatory joinder. How do you distinguish that case? I'm sorry, Your Honor. I'm simply not remembering the facts so good. It was a home invasion, sexual assault, different charges that were allowed. The Supreme Court said they were separate and distinct acts and they didn't need to be joined. Your Honor, I think that's answered by the fact that this is a murder case and we know the breadth of Illinois' murder statute combined with the breadth of its accountability rules. We have no answer effectively from the state all the way through on felony murder predicated on mob action and Michael telling Rodriguez to go shoot a Gonzalez is just that kind of mob action. If we think about common design, every prosecutor in a closing to a jury gives the example of in for a penny, in for a pound and there's a lot of pennies that are being charged by the state in 1991 here with the distribution of the guns. In Gooden, it was the ex-husband that was accused of the home invasion and sexual assault and the state did not have the DNA results until well after the time had already run. The state was late getting the DNA so there was a question of whether or not they had knowledge. In this case, we have the murderer. You know there's a dead person. You have the defendant tied to the murder through the solicitation of Hector Rodriguez, correct? Yeah, they had enough for to be able to bring an indictable case back in 1991 and a couple of more recent cases that cite this court's decision in the last Luciano case indicate what seems to be enough. We have the McGee case and I believe there's still a motion pending to cite the later McBride case and both of those have the message that okay state once you have a witness telling the you know indicating to the prosecution that there's an offense here that's enough knowledge. In McBride, you might want the lab test on the DUI not just the cop's word but still you have enough to indict. In McGee, it's well and we're not sure if the murder happened in Illinois or Indiana but we know the witness says the beating happened in Illinois and given the breadth of Illinois' murder statute and accountability rules that's enough to and that's enough to indict. What about the state's argument that they didn't know and did not have sufficient knowledge of who the shooter was in terms of was it a member of the group or some other individual and that that explains why compulsory joiners should not apply? Your honor, they took one of the shooters to trial. This is what's been befuddling me through this entire argument and all the proceedings below. One thing that we really didn't know in the last appeal that we know is we couldn't find like I guess the original Luciano grand jury was destroyed so there's this substitute that happens within a month or two of that of the Randhell grand jury where they indicted Randhell as one of the principal shooters and took him to trial. If they had enough confidence to indict Randhell and take him to trial as a principal then they certainly had enough confidence to think that we're not going to have an untriable case because we don't know the principal is. We have that from Rodriguez anyway because Randhell gets the shotgun, Bamgham gets the 30-30 and the ballistics comes in that this unusual combination of weapons is what is used at the shooting and they have that on tape in about a month after the shooting and a statement orally from him within a week or two. So you just said that the the 91 grand jury transcript was destroyed? Yes, it comes up in the record that the storage facility that was holding that transcript had an incident where there was smoke or fire damage to that 1991 transcript. When was the, do you know when the change in the date on the indictment account one was made? Do you know? I don't know. Were you aware of that? I had not caught it. My assumption is that it's slightly confusing versions coming out of Rodriguez early as to whether the meeting had occurred. No one has the right to change that date without approval of the court. Yeah, we don't have the entire, what would be the entire common law record from the 90 and 91 plea agreement so if there was an agreement to an amendment of the indictment I am not familiar with where that is in the record. But frankly it doesn't matter because continuing, because possession is a single act, possession distribution is a single act that's set up by the Illinois Supreme Court. And even if we said there's no common design theory, that there's no unanswered felony murder theory, it's still the same act because just like a series of gunshots have to be charged in a single trial, a series of instructions, that amount of solicitations ought to be charged in a single trial, lest the state harass the defendant through multiple prosecutions. Is it your position that under the law in Illinois that common design principle or any accountability theory casts a wider net than if you're just charging the principle, correct? It's a much wider net, your honor, and there's a reason that they bring five overlapping murder charges I think in this case and all of those charges, and this is on the briefs by statute, also include common design liability or as the state argued in closing, solicitation, intent to solicit liability or aiding and abetting like distributing those guns liability. They settled on any one of those theories, the possession distribution of the weapons, the instructions to Rodriguez, the instructions to the group to go out and commit the mob action and retaliation against the deuces. A trier fact that accepted any one of those would also have to find Michael guilty for the murder. It's because those statutes are so broad. I mean, and we see this often in gang cases. Well, the gang members won't tell us who actually fired the gun, but we find the gun in the gang's possession and a witness says it's one of them. So even if we're not sure who's the principal and who's the accomplice, there's a conviction and the briefs. The defendant makes an argument that it was the defendant's burden remains the defendant's burden and that the defendant, if there were going to be any witnesses called, should have been called by the defendant. What do you say to that? We have no obligation to call any witness because documentary evidence allowed a third stage proceedings. And frankly, if we're going to demonstrate actual knowledge, the best way to do that is by having the words of the time. And we have that where the state's attorneys and the assistance are signing off on the warrant affidavits and conducting the grand jury. Mr. Yeasting, if the court finds ineffective assistance of trial counsel and appellate counsel at the third stage, does the defense need to file anything else in order to dispose of these charges? No, and thank you, Your Honor. The court found deficient performance, prejudice, and whenever that's been found in a failure to file a speedy trial motion case, the result has been reversal of the conviction and dismissal of the charges. As we detailed toward the end of our brief, Rule 615 allows this court to modify the proceedings subsequent to the judgment. The judgment here is the granting of the post-conviction petition. The proper modification is, let's not get confused, get bogged down in another pro forma hearing and delay this case further. The documentary evidence is overwhelming and therefore this court should affirm the trial court's judgment granting Michael's conviction and reverse Michael's conviction. Mr. Yeasting, didn't the trial judge here basically find that the compulsory or that the motion should have been filed, the motion would have been granted, and found everything that he asked to be done, he made all the findings. He just had a problem with, well, this wasn't really argued here and I don't want to step on somebody's toes, but why would any of those things need to be filed? They wouldn't. The motion for joinder. They wouldn't, Your Honor. There's no fourth stage to the post-conviction hearing act. Once we have deficient performance and prejudice, there's an entire constitutional violation and the conviction can't stand. And once we have this overwhelming evidence that joinder would apply, this court should additionally order that the conviction should be vacated and that the charges be dismissed. Thank you, Your Honors. Justice Burkett, any other questions? No, thank you. Justice Shostak, any other questions? Thank you. All right. Ms. Mahoney, you may proceed if you wish to do so. You need to come online. The Gooden case that was discussed during counsel's argument, that wasn't a consciously aware case. That was the same Axe case. And what happened there, it was the home invasion by the ex-husband. When he got inside, he battered her. At the preliminary hearing, it came out that not only did he batter her, he sexually assaulted her. And those sexual assault counts were added later. And the Gooden court said, despite the same location, same players, different Axe. The beating and the sexual assault were different Axe. Two different physical Axe. Two different physical Axe. And it's the state's position possessing weapons three days before the murder and three days after the murder are different than possessing weapons on the day of the murder. You know, that was the argument at the sentencing hearing in the original charges. The state argued that there were separate Axe of possession. Judge Dunn, in ruling on that argument, rejected the state's theory. He said it was one continuous Act, despite the fact that these weapons were covered in two different locations. He said, it's not two separate Axe. I'm rejecting the state's request for consecutive sentencing. He didn't do so based upon the defendant's dangerousness. He did so on the basis that he found that the Axe of possession, regardless of the different dates, they were all constructed possession, that they were constructively in the defendant's possession. So it's the same Act, right? Same set of facts, which is distinct from compulsory joinder, same Act requirement. They are two distinct inquiries. And the Illinois Supreme Court has said, same set of facts analysis does not apply to a compulsory joinder question. And that's what is being confused here. So again, same set of facts, different acts under compulsory joinder, possession at his house, possession at Diane Chavez's, completely different than the possession and distribution on the day of the murder. Let me, we talked about, and counsel commented on it, about the state's obligation to continue and do investigation. Have you, are you familiar with the standards of criminal justice, ABA standards for criminal justice, prosecutorial investigations? You know, the state, the state's attorney does have an obligation to investigate the facts of a case all the way up to and including and beyond a prosecution, if there are questions. Correct? Correct. Okay. So the state hit a wall when none of the witnesses would commit to a handwritten statement, an audio recorded statement, or a grand jury statement. And where is the evidence that any of those other witnesses were called before the grand jury, given immunity, or any of the other potential tools in the toolbox of the state's attorney were used? Juan Acevedo made it clear that he would not commit to his statement. And he purged himself at the Rand Health. Correct. Correct. He's willing to go to jail. These witnesses were scared. These witnesses were being threatened. Hector Rodriguez was for the state to then put those witnesses in the grand jury, and even give them immunity. There's no obligation to give co offenders immunity in this case to just get the one. But importantly, these witnesses were being threatened. And in the Ron held trial, you had the witness to his admission back off because her life had been threatened. And so then you have to ask yourself, is there an ethical obligation to the state not to put a witness on the stand who's going to be murdered by the defendant in his game? You've already, we've already been down this road. The only physical act that the defendant performed was the possession and distribution of the weapons. That is it. That's the only act. And the state's obligation, if you cannot prove those lesser offenses, you've got to dump the unless you get permission from the trial court, which you can, you can make a request that the court in the interest of justice permit the state to sever those counts. That's what that's am I wrong about section three dash three, if the state wants to, in the interest of justice, sever the counts. But under three dash three, you have to ask yourself, was the state actually required to bring the murder charges at the outset? And based on what they had, they didn't have any evidence about the possession on October 31st. They have Hector Rodriguez's audio recorded statement that talks about October 28th, and about November 4th at Diane Chavez's. They don't have anything about the October 31st. So if, if the, if Mr. Luciano was going to go to trial on the possession and solicitation charges, the only evidence that you would have had was his fingerprints on the guns. Is that what you're telling us? We would have Hector Rodriguez, who saw the defendant with the guns on October 28th and on November 4th, and that those guns were then found in Diane Chavez's house. And among those weapons, there was one that had defendant's fingerprint on it. That's all we had. We don't have anything about October 31st. We don't have anything about the shooter. You have, you have the defendant's statements. And you have Hector Rodriguez, who unfortunately did have something bad happen, but he still remained stalwart and, and went ahead and testified. Correct. Didn't think anything was going to stop him, except if he was killed, would have been a serious problem. Correct. But Hector could not tell us about the day of the shooting events because he was not the I'm going to ask this question and I know the answer. The state's attorney in Kane County and other counties in multiple gang prosecutions for the same act where there's severances, there have been cases where one defendant has been acquitted, but the state continues to pursue the case and try the, and try the murder against other defendants. Correct? Correct. That has happened in this, the press release that state's attorney announced in 2005 or 2007 and all the list of all the defendants and the murders and who the victims were. A lot of those cases fell apart, but the state continued to pursue other defendants who were responsible for those murders. Correct? Correct. Why is this case different? And I think you're tying this into the Ron Held trial, which was decidedly different than this case, because in the Ron Held trial, we had an admission by the defendant to committing the crime. It makes it a completely different case, but to be perfectly honest with you, I it's, it appears to have been a premature decision to file those charges because they had the witness to the admission. They didn't have her locked in. She became scared and she is that your analysis or is that Gary Johnson's decision? That's when Mr. Johnson decided because there was no testimony about that. No, you can see it within the records itself. You have the information in the documents provided by the state indicating that they had a witness to the admission and that that witness then came back to the police and said, I'm afraid my life has been threatened. I'm not doing this. And what page of the record does it say the state's attorney made that decision based upon that? No, that's what happened. That isn't, they, they had already charged. They charged Ron Held based on that. You can see that in the grand jury testimony. I'm talking about this case. I'm talking about defendant's case. We don't have an admission. Okay. I'm sorry. I just want to make sure, uh, Justice Shostak, do you have any other questions? Nothing further. All right. Uh, Ms. Mahoney, if you want to sum up, uh, this would be the time. Thank you. Yes. It's just the state's position that there were numerous errors here. Each that require this court to reverse the finding, um, granting post-conviction relief. We ask that you modify the judgment and deny post-conviction relief. All right. Uh, thank you counsel for your arguments this morning. And again, my apologies for being late. Um, we will, they were, you obviously were both aware of the record of, of the circumstances that came before you might even have been attorneys based upon the timeframe here. So thank you very much for your assistance here this morning. We will take this matter under advisement. We will issue a decision in due course and Justice Burkett. Thank you both. Great job, both of you. And, uh, you are now excused and you may leave the proceedings. Thank you. Thank you.